UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIO MARQUEZ, | ) | 1:06-CV-1423 LJO JMD HC |
| Petitioner, | ) | |
| v. | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| K. MENDOZA-POWERS, | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court. He was convicted of second degree murder in 1980. The trial court sentenced him to an indeterminate term of 16 years to life. (Answer at 1; Petition at 1.)

On October 3, 2005, Petitioner appeared before the California Board of Parole Hearings for a parole consideration hearing. The Board denied parole. (Answer at 1; Ex. 2.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court challenging the Board's denial of parole. The court summarily denied the petition. (Answer at 2; Exs. 3-5.)

On October 13, 2006, Petitioner filed the instant petition in this Court.  The petition raises the following two grounds for relief: 1) Petitioner's rights were violated when the parole board found him unsuitable for parole because the board improperly relied on the commitment offense and mischaracterized the facts; and 2) the parole board intentionally mischaracterized the favorable post-commitment factors that should have entitled Petitioner to a finding of parole suitability.

On February 25, 2008, Respondent filed an answer to the petition.

## FACTUAL BACKGROUND[1]

Officers from Kern County interviewed Roberto Gomez, the victim's brother, who stated that he had witnessed the entire incident.  On May 11, 1980, at approximately 2135 hours, Petitioner came to the residence at 215 Kincaid Street, Bakersfield, California, to visit his children.  Guadalupe allowed Petitioner into the residence.  Shortly after Petitioner had been seated he stood up and said, "What I'm really here for is to do this."  Petitioner pulled a knife–a kitchen knife from his waistband–and grabbed Guadalupe by her hair in an attempt to pull her out of the house.  Petitioner had his feet outside the front door, although his wife remained inside of the house, when Petitioner swung at Guadalupe with the knife.  Petitioner missed her and struck the door.  Petitioner did this three times, and the third time the knife broke when it hit the door.  When the knife broke, Petitioner released Guadalupe and Gomez managed to get the piece of knife remaining in Petitioner's hand away from him.  Gomez stated that he picked up the aluminum lawn chair and hit Petitioner with it.

A struggle between both men began and Guadalupe attempted to lock herself in a bedroom but was unsuccessful.  Petitioner grabbed the other knife that was on the kitchen table and approached Guadalupe.  Petitioner stabbed Guadalupe at least two times with the knife.  Gomez ran towards Petitioner and attempted to pull him away from Guadalupe.  As Gomez pulled Petitioner off of Guadalupe, Petitioner threw the knife at her and ran from the house.  Guadalupe gave Gomez the telephone number of the sheriff's office, and while Gomez was dialing the number, Petitioner reentered the residence, picked up the lawn chair, and hit Guadalupe with it, again exiting the house. Gomez observed Petitioner enter his station wagon, lock the doors, and drive from the house.

---

[1] The facts are derived from the factual summary read into the record during Petitioner's October 3, 2005 parole consideration hearing.  (Answer, Ex. 2 at 11-14.)

Guadalupe was transported by ambulance to Kern Medical Center where she died at approximately 2325 hours. On May 12, 1980, at approximately 1330 hours, an autopsy was performed on Guadalupe. The cause of death was determined to be multiple stab wounds of the body. The autopsy revealed that Guadalupe had received what appeared to be six puncture wounds. Four of the wounds were in the middle of her back but did not penetrate the body cavity. The fifth puncture wound was to her right neck and shoulder area and also did not penetrate the body cavity. The sixth puncture wound was to the chest area, which penetrated the body approximately four to six inches. The wound appeared to penetrate the aorta and both lungs, thus causing the death of Guadalupe.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, at the time the petition was filed, Petitioner was confined at Avenal State Prison, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id.</u>

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. A

federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

**A.  Grounds One and Two**

Petitioner argues that his rights were violated when the parole board found him unsuitable for parole because the board improperly relied on the commitment offense and mischaracterized the facts. Petitioner further argues that the parole board intentionally mischaracterized the favorable post-commitment factors that should have entitled him to a finding of parole suitability.

These claims were presented in a petition for writ of habeas corpus to the California Supreme Court, which summarily denied the petition. (Answer, Exs. 3-5.) When the state court reaches a decision on the merits but provides no reasoning to support its conclusion, we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). However, although we independently review the record, we still defer to the state court's ultimate decision. Id.

"We analyze a due process claim in two steps. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). California's parole scheme gives rise to a

cognizable liberty interest in release on parole. Id. at 1127-28. However, "because parole proceedings are not part of the criminal prosecution, the full panoply of rights due a defendant in a criminal proceeding is not constitutionally mandated. Instead, the due process rights that flow from a liberty interest in parole are limited: the prisoner must be provided with notice of the hearing, an opportunity to be heard, and if parole is denied, a statement of the reasons for the denial. In addition, due process requires that 'some evidence' support the [determination regarding parole], and that the evidence relied upon must possess 'some indicia of reliability.' The 'some evidence' standard is satisfied if there is any reliable evidence in the record that could support the conclusion reached. Finally, determining whether the 'some evidence' standard was met does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1079-80 (C.D. Cal. 2006) (citations omitted); see also Sass, 461 F.3d at 1128-29.

When reviewing a decision of the Board of Parole Hearings or the Governor regarding a prisoner's suitability for parole, the relevant inquiry is "whether some evidence supports the decision . . . that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008). The Board and Governor both have authority to resolve conflicts in the evidence and decide the weight to be given to particular evidence, and each has broad discretion that will only be disturbed when due consideration is not given to the specified factors. Id. at 1204. Further, the Board and Governor may rely on the nature of the commitment offense as a basis to deny parole, but only when, considered in light of other facts in the record, the offense continues to be predictive of current dangerousness. Id. at 1221; Cal. Code Regs., tit. 15, § 2402; see also Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007) ("[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes."); Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.").

1  Facts relevant to determining the predictive value of the commitment offense include the amount of
2  time since the offense, the prisoner's history before and after the offense, and the prisoner's current
3  demeanor and mental state.  In re Lawrence, 44 Cal.4th at 1211, 1214, 1219, 1221.
4        The state court did not clearly err in application of Supreme Court law.  Petitioner was
5  provided a parole consideration hearing in which he and his counsel took part. (Answer, Ex. 2.)  The
6  Board also stated the reasons for the denial of parole on the record at the hearing. (Id. at 59-66.)
7        One reason given by the Board for denying parole was the nature of Petitioner's commitment
8  offense.  The Board noted that, eight days before Petitioner murdered his wife, he caused a
9  disturbance at her residence, threatened to abduct the children, broke the glass out of the back
10 window, and threatened his wife before leaving.  On the day of the murder, Petitioner armed himself
11 with a knife and went to his wife's residence using the ruse of visiting his children.  Once inside,
12 Petitioner stabbed his wife multiple times in the body, neck, shoulder, and chest, with one wound
13 penetrating four to six inches into his wife's chest.  Petitioner then threw a lawn chair at his wife
14 while she lay dying on the floor.  The Board found that these facts demonstrated Petitioner acted in
15 an especially cruel and callous manner.  It also found the motive for the crime, Petitioner's wife's
16 refusal to reconcile the marriage, was trivial in relation to the crime. (Answer, Ex. 2 at 59-62.)
17       The Board also cited Petitioner's lack of insight into the causative factors of his offense as a
18 reason for denying parole.  The Board noted that, during the parole hearing, Petitioner claimed that
19 he only accidentally stabbed his wife while he was trying to kill his brother-in-law.  The Board found
20 that Petitioner's claim was not believable, as Petitioner's wife received six stab wounds, including
21 one that was four to six inches deep, while Petitioner's brother-in-law, the alleged target, had no
22 significant injuries.  The Board also pointed to the fact that Petitioner had made excuses for the
23 incident that occurred eight days before the murder, and denied it happened, and that he claimed the
24 police were mistaken when they stated that Petitioner admitted stabbing his wife.  Further, Petitioner
25 claimed that a witness's statement that Petitioner had threatened to use a knife against his wife was
26 taken out of context.  The Board found that Petitioner's claims were not believable, given the
27 statements of the other witnesses, and that Petitioner had attempted to diminish his culpability for the
28 offense. (Answer, Ex. 2 at 62-65.)

The Board concluded that Petitioner's actions were still unpredictable, and that he was therefore still a threat to others, based on the nature of the commitment offense in combination with Petitioner's inability to be forthright and his failure to understand the causative factors of the crime. (Answer, Ex. 2 at 65.)

The underlying facts considered by the board were properly considered and had some indicia of reliability. See Answer, Ex. 2 at 11-14, 16-19, 46, 51-54; see also Cal. Code Regs., tit. 15, § 2402(b) ("All relevant, reliable information available to the panel shall be considered in determining suitability for parole."); Cal. Code Regs., tit. 15, § 2402(c) (stating that the enumerated unsuitability factors are only set forth as general guidelines).  Petitioner has not shown that the Board mischaracterized or failed to consider any relevant facts including the favorable post-commitment factors.  Further, the nature of Petitioner's commitment offense and his failure to gain insight into the causative factors of the crime constituted some evidence that Petitioner posed an unreasonable risk to public safety.  See In re Shaputis, 44 Cal.4th 1241, 1258-61 (2008) (affirming Governor's denial of parole based on premeditated nature of commitment offense and lack of insight, despite prisoner's many years of laudatory work reports, discipline-free record, participation in many rehabilitative programs, and acknowledgment that crime was wrong); Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.").

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall

1  be served and filed within ten (10) court days (plus three days if served by mail) after service of the
2  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
3  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may
4  waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    November 24, 2008**               /s/ John M. Dixon
                                    UNITED STATES MAGISTRATE JUDGE